**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| **ROMANA FLORES,** | ) |
| Plaintiff, | ) Case No. EDCV 14-00742 AJW |
| v. | ) **MEMORANDUM OF DECISION** |
| **CAROLYN W. COLVIN,** | ) **AND ORDER** |
| **Acting Commissioner of** | ) |
| **Social Security,** | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

In a February 6, 2013 written hearing decision that is the Commissioner's final decision with respect to plaintiff's application, an administrative law judge (the "ALJ") found that plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work, and that she was not disabled because she could perform work available in significant numbers in the national economy.[JS 2; Administrative Record ("AR") 11-21].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

Plaintiff contends that the ALJ erred in finding that plaintiff's impairments did not meet or equal section 1.02A of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ found that plaintiff had severe medically-determinable impairments consisting of morbid obesity[1], disorder of the back, and dysfunction of the knee and hip joints, as well as non-severe medically determinable impairments consisting of carpal tunnel syndrome and depression. [AR 13-14]. The ALJ found that plaintiff's impairments, singly or in combination, did not meet or equal a listed impairment. [AR 14].

To "meet" a listed impairment, a disability claimant must establish that his condition satisfies each element of the listed impairment in question. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to all of the criteria for the most similar listed impairment. Tackett, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526); see Sullivan,

---

[1] The ALJ noted that an October 5, 2011 examination report states that plaintiff was 60.5 inches tall and weighed 331 pounds, and that a June 20, 2012 examination report states that she weighed 353.6 pounds. [AR 16, 17].

493 U.S. at 531.

Under section 1.02A (which incorporates the requirements of section 1.02), a claimant must demonstrate: (1) major dysfunction of a peripheral weight-bearing joint ( i.e., hip, knee, or ankle), (2) characterized by gross anatomical deformity with chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint, with (3) "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)"; and (4) an "inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Part 404, Subpt. P, App. 1, §§ 1.02, 1.02A.

Plaintiff suffers a major dysfunction of a joint with involvement of a major peripheral weight-bearing joint, her right hip. In November 2009, plaintiff's treating orthopedist, Paul Burton, D.O. diagnosed advanced osteoarthritis of the right hip based on a CT scan revealing advanced degenerative changes. [AR 15, 424, 428]. Dr. Burton noted that plaintiff would likely require a total right hip replacement at some point. [AR 428]. A worker's compensation consultative orthopedic surgeon, Dr. Kim, diagnosed degenerative arthritis in the bilateral hips, right greater than left, as well as chronic right hip strain. [AR 16, 519]. The ALJ found that plaintiff had a severe hip joint dysfunction. [AR 14].

Plaintiff demonstrated that her hip dysfunction is characterized by a "gross anatomical deformity." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. An October 2, 2009 x-ray of plaintiff's right hip revealed "chronic deformity of the right femur associated with avascular necrosis[2] secondary to [degenerative joint disease] of the right hip joint." [AR 15, 453]. The right femoral deformity also was noted on a November 2009 CT scan of plaintiff's right hip. [AR 15, 457].

Plaintiff's medical records document the existence of "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. Medical records document complaints of joint pain and stiffness, and limited or abnormal range of motion in the right hip and right lower extremity. [See, e.g., AR 15, 324, 393, 405, 410, 414, 419, 424,

---

[2] "Avascular necrosis is the death of bone tissue from a lack of blood supply. Avascular necrosis can lead to tiny breaks in the bone and the bone's eventual collapse. It can be caused by bone fracture or joint dislocation, and it is also associated with long-term use of high-dose steroids and excessive alcohol intake." Schmidt v. Colvin, 2014 WL 4237124, at *2 n.3 (internal citations omitted).

427, 430, 439, 479-481, 489, 506, 514, 520-522, 533, 541].

Plaintiff's medical records also include "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. As the ALJ noted, plaintiff's October 2009 right hip x-ray revealed loss of joint space and avascular necrosis of the right femoral head (a form of bony destruction). [AR 15, 453]. Plaintiff's November 2009 CT scan of the right hip revealed "complete obliteration of the superior joint space" and "[m]arked narrowing of the medial joint space." [AR 457]. A March 2011 x-ray of plaintiff's right hip confirmed severe degenerative changes of the right hip, with loss of bone due to avascular necrosis and significant narrowing of the right hip joint compartment. See Lyle v. Astrue, 2011 WL 3924799, at *6 (W.D. Wash. Aug. 8, 2011) (holding that medical reports documenting right hip osteoarthritis due to avascular necrosis satisfied the first three requirements of section 1.02A), report and recommendation adopted by 2011 WL 3953780 (W.D. Wash. Sept. 6, 2011).

In order to meet or equal section 1.02A, plaintiff also must be unable to ambulate effectively within the meaning of section 1.00B2b, which defines "inability to ambulate effectively" as an "extreme limitation of the ability to walk," and provides a non-exhaustive list of examples, including "the inability to walk without the use of a walker, two crutches or two canes," "the inability to walk a block at a reasonable pace on rough or uneven surfaces," "the inability to carry out routine ambulatory activities, such as shopping and banking," and "the inability to climb a few steps at a reasonable pace with the use of a single hand rail." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02A, 1.00B2b.

Although the evidence regarding plaintiff's ability to ambulate conflicts, there is evidence that supports her contention that she cannot "ambulate effectively." In November 2009 and December 2009, Dr. Burton noted that plaintiff walked independently but had a limp on the right side. She said that her right hip, knee, and ankle pain became worse with walking or standing. Plaintiff had a "positive Trendelenburg on the right."[3] [AR 405, 419, 420, 421, 424, 427].

---

[3] A Trendelenburg sign is

> a physical examination finding associated with various hip abnormalities (those associated with abduction muscle weakness or hip pain e.g., congenital dislocation, hip rheumatic arthritis, osteoarthritis) in which the pelvis sags on the side opposite

During a September 2010 consultative orthopedic examination, plaintiff "walk[ed] with an antalgic gait" due to right knee pain. [AR 221]. During an October 2010 consultative orthopedic examination, Dr. Kim noted that plaintiff ambulated with a slightly antalgic gait, favoring the right lower extremity. [AR 522]. Plaintiff reported that her orthopedic symptoms made it difficult for her to do household chores, put her shoes and socks on, and care for her personal hygiene. She said that she had problems with postural activities, stair-climbing, and prolonged walking or standing. [AR 514].

During a consultative orthopedic examination in April 2011, plaintiff used a cane, but she was able to walk with a normal gait without it. [AR 233]. During that same examination, plaintiff was unable to stand or walk on either her heels or toes and was unable to step up onto the step-stool in order to get onto the examining table. [AR 233].

During a December 2011 psychiatric examination, plaintiff walked with a cane and appeared to be severe pain. She reported severe low back and hip pain. [AR 285].

In a June 20, 2012 progress note, Hector Veron, a physician's assistant who worked with Daniel Franco, M.D., reported that he ordered a walker for plaintiff because she was having "a lot of difficulty walking" due to her weight, muscle spasms, and joint pain. [AR 389]. He noted that within a six-month period she progressed from not using a cane to using a cane and then to a walker, and that she may need a wheelchair if her lower extremity problems "progress at a fast pace." [AR 289]. He noted that plaintiff said that she could not dress and shower properly at home. [AR 389].

Plaintiff attended the January 2013 administrative hearing using a walker. [AR 39]. She testified that she used the walker "always," and that she could walk for no more than 10 minutes. [AR 46]. She also testified that her son did all of the grocery shopping, and said that she did not go for walks or visit friends. [AR 45].

Although formal subsidiary findings are not required at step three, the ALJ must "discuss and evaluate the evidence that supports" his or her step three finding. Kennedy v. Colvin, 738 F.3d 1172, 1178

---

    the affected side during single leg stance on the affected side; during gait, compensation occurs by leaning the torso toward the involved side during stance phase on the affected extremity.

Stedman's Medical Dictionary Trendelenburg sign (2014).

(9th Cir. 2013); see Gonzalez v. Sullivan, 914 F.2d 1197, 1200, 1201 (9th Cir. 1990) (holding that the ALJ did not err as a matter of law in failing to state what evidence supported his finding that the claimant failed to meet or equal a listed impairment because his four page, single-spaced "evaluation of the evidence" was "an adequate statement of the 'foundations on which the ultimate factual conclusions are based,'" so that a reviewing court can "know the basis for the decision") (quoting Lewin v. Schweiker, 654 F.2d 631, 634 (9th Cir. 1981)).

Here, the ALJ's evaluation of the evidence does not provide an adequate statement of the "subordinate factual foundations" on which his step three finding is based because the record contains evidence that meets section 1.02A's first three criteria and at least arguably meets the fourth requirement that she be unable to ambulate effectively within the meaning of section 1.00B2b, and it is not clear from the ALJ's decision how he evaluated all of the evidence relevant to the step three determination. Therefore, a remand for further administrative proceedings is warranted. See Lyle, 2011 WL 3924799, at *6 (holding that where there was "ample evidence" meeting the first three requirements of section 1.02A and "conflicting evidence regarding [the] plaintiff's ability to ambulate effectively," the ALJ's failure to make "comprehensive and analytical findings specific to" section 1.02A was reversible error, and remanding for further administrative proceedings with directions that "the ALJ properly consider all of the medical evidence," "reevaluate whether [the] plaintiff's right hip osteoarthritis meets or equals a listing," and "adequately explain his conclusion"); see also Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (remanding for a proper consideration of step three equivalence, and noting that if the claimant was not found disabled at step three on remand, the ALJ should continue to steps four and five).

///

///

///

**Conclusion**

The Commissioner's decision is not based on substantial evidence and is legally erroneous. Accordingly, the Commissioner's decision is **reversed**, and the case is **remanded** for further administrative proceedings and issuance of a new hearing decision consistent with this memorandum of decision.[4]

**IT IS SO ORDERED.**

August 20, 2015

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[4] This disposition makes it unnecessary to consider plaintiff's remaining contentions.